**In re Stephen Robert MICHAEL and Robin Michelle Michael, Debtors.**

No. 04–80726.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Aug. 3, 2005.

Lara Anne Armstrong, McCalla Raymer, Roswell, GA, Steven R. Jacob, Alpharetta, GA, for Debtors.

### ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS

MARY GRACE DIEHL, Bankruptcy Judge.

This matter is before the Court on the Trustee's Objection to the Debtor's Claim of Exemption. The Trustee objects to Debtor's claimed exemption pursuant to O.C.G.A. § 44–13–100(a)(2.1)(C) in a variable life annuity with a total value of $80,984.64. An evidentiary hearing in this matter was held on June 10, 2005. The Court, having considered the record before it, hereby sustains Trustee's Objection to Debtor's claimed exemption of the variable life annuity.

### FACTS

In 1996, Debtor, Robin Michelle Michael ("Debtor"), inherited $110,000 and invested a lump sum of $50,000 of this inheritance in a Variable Annuity Contract (hereinafter "Annuity Contract") with First Investors Life Insurance Company (hereinafter "First Investors"). First Investors is a non-governmental, for-profit organization. Additionally, Debtor is not currently employed by First Investors nor has she ever been employed by them.

By default, since Debtor did not make any election, the Annuity Contract has a maturity date of May 9, 2050 (when Debtor attains the age of eighty-five). However, the maturity date and annuity option can be changed by Debtor upon written request at any time prior to the initiation of payments. Debtor retains the right to make withdrawals from the annuity fund prior to the maturity date. Withdrawals prior to Debtor attaining age 59½ are subject to a 10% penalty on any accumulated income but the penalty is inapplicable to Debtor's initial investment of $50,000. Additionally, any withdrawals and surrenders from the annuity are taxed in the year of receipt to the extent that the accumulated value in the fund exceeds Debtor's initial investment. To date, Debtor has not received any payments under the Annuity Contract.

On December 13, 2004, Debtor jointly filed a Chapter 7 case with her husband. In the original petition, Debtor valued the Annuity Contract at $75,000 and claimed it exempt under O.C.G.A § 44–13–100(a)(2)(E). On April 5, 2005, Debtor filed an amendment to the petition valuing the Annuity Contract at $80,895 and claiming it exempt under O.C.G.A. § 44–13–100(2.1)(C). On February 11, 2005, Trustee objected to Debtor's attempt to exempt the value of the Annuity Contract.

### CONCLUSIONS OF LAW

When a debtor files a bankruptcy petition, "all legal or equitable interest of

the debtor in property" becomes property of the bankruptcy estate subject to claims by creditors. 11 U.S.C. § 541(a)(1) (2005). However, to provide a debtor with a fresh start after bankruptcy, the Bankruptcy Code provides for certain interests in property to be exempt from the bankruptcy estate. Given that these exemptions are a fundamental component of a debtor's fresh start, they are construed liberally and the objecting party bears the burden of proof to show that an exemption has not been properly claimed. Fed. Bankr.R. 4003(c). Thus, the Trustee must establish that Debtor's claim of exemption as to the Annuity Contract is not proper.

Under Section 522(b) of the Bankruptcy Code, Congress provided that states could elect to "opt out" of the federal exemption scheme. Since Georgia is an "opt out" state, Georgia law governs the issue before this Court as to whether Debtor's interest in the Annuity Contract is exempt. Sections 44–13–100(a)(2) and (a)(2.1) of the Georgia Code provide as follows:

(a) In lieu of the exemption provided in *Code Section 44–13–1*, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:

(2) The debtor's right to receive:

(A) A social security benefit, unemployment compensation, or a local public assistance benefit;

(B) A veteran's benefit;

(C) A disability, illness, or unemployment benefit;

(D) Alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E) A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and

(F) A payment from an individual retirement account within the meaning of *Title 26 U.S.C. Section 408* to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(2.1) The debtor's aggregate interest in any funds or property held on behalf of the debtor, and not yet distributed to the debtor, under any retirement or pension plan or system:

(A) Which is: (i) maintained for public officers or employees or both by the State of Georgia or a political subdivision of the State of Georgia or both; and (ii) financially supported in whole or in part by public funds of the State of Georgia or a political subdivision of the State of Georgia or both;

(B) Which is: (i) maintained by a nonprofit corporation which is qualified as an exempt organization under *Code Section 48–7–25* for its officers or employees or both; and (ii) financially supported in whole or in part by funds of the nonprofit corporation;

(C) To the extent permitted by the bankruptcy laws of the United States, similar benefits from the private sector of such debtor shall be entitled to the same treatment as those specified in subparagraphs (A) and (B) of this paragraph, provided that the exempt and nonexempt status of periodic payments from

such a retirement or pension plan or system shall be as provided under subparagraph (E) of paragraph (2) of this subsection; or

(D) An individual retirement account within the meaning *Title 26 U.S.C. Section 408.* O.C.G.A. §§ 44–13–100(a)(2) and (2.1)(C).

In this case, Debtor contends that the Annuity Contract is exempt under section 44–13–100(a)(2.1)(C) of the Georgia statute whereby retirement or pension plans from the private sector are exempt "to the extent permitted by the bankruptcy laws of the United States." This language thus implicates the federal exemption scheme to be applied to those plans or contracts funded by the debtor or the debtor's employer. Therefore, the Court must examine section 522(d)(10)(E) of the Bankruptcy Code as a part of its determining whether the Annuity Contract is exempt under Georgia law. Section 522(d)(10) of the Bankruptcy Code states as follows:

(d) The following property may be exempted under subsection (b)(1) of this section:

(10) The debtor's right to receive—

(A) a social security benefit, unemployment compensation, or a local public assistance benefit;

(B) a veterans' benefit;

(C) a disability, illness, or unemployment benefit;

(D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986. 11 U.S.C. § 522(d)(10)(A)-(E).

Congress has described section 522(d)(10)(E) of the federal exemption statute as exempting certain benefits that are "akin to future earnings of the debtor." H.R. Rep. 95–595 at 362 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6318. This exemption protects wage substitutes that serve as retirement income for the debtor in the future. *Id.* Even though sections 44–13–100(a)(2)(A)–(D) of the Georgia statute are identical to sections 522(d)(10)(A)-(D) of the Bankruptcy Code, the two statutes differ in that Title 11 includes section 522(d)(10)(E)(i)-(iii) whereby payments under a plan or contract that would be exempt under section 522(d)(10)(E) are excluded if they have those characteristics specified in (i)—(iii). Moreover, the Georgia exemption statute differs from section 522(d)(10)(E) of the federal statute in two other ways. First, the Georgia statute makes a distinction between the exemption of plan payments covered under section 44–13–100(a)(2)(E) and the debtor's aggregate interest in a plan addressed in section 44–13–100(a)(2.1)(A)–(D). Second, the Georgia statute addresses the treatment of

plans funded by the state, plans funded by a nonprofit corporation, and plans funded by the private sector separately in section 44–13–100(a)(2.1). However, since Georgia has adopted an exemption scheme closely patterned after the federal scheme the language "to the extent permitted by the bankruptcy laws of the United States" in section 44–13–100(a)(2.1) of the Georgia statute seemingly refers to sections 522(d)(10)(E)(i)-(iii) of the Bankruptcy Code. Therefore, in order to determine if the Annuity Contract is exempt under Georgia law, the Court must consider whether it would be exempt under the bankruptcy laws of the United States, specifically section 522(d)(10)(E) of the Code.

■ Section 522(d)(10)(E) provides that a fund must satisfy the following three requirements before qualifying for an exemption: (1) the right to receive payments under the plan must be from "a stock bonus, pension, profitsharing, annuity, or similar plan or contract"; (2) the right to receive payment under the plan must be "on account of illness, disability, death, age, or length of service"; and (3) the right to receive payment must be "reasonably necessary for the support of the debtor and any dependent of the debtor." In this case, the first issue before the Court is whether Debtor's Annuity Contract even qualifies as an "annuity, or similar plan or contract" as used in the statute.

■■ Even though "annuity, or similar plan or contract" is used in the statute, Debtor's Annuity Contract does not fall within the category of exemptible investments listed. "Annuity" is a generic term which refers to "an obligation to pay a stated sum ... to a stated recipient." BLACKS LAW DICTIONARY 98 (8th ed.2004). Thus, "annuity" in the statute refers to a payment method, not the underlying nature of the asset. Here, the facts that the fund in issue has been identi-

fied as an "Annuity Contract" and Debtor has the right under the contract to elect an annuity payout option are not sufficient to classify the fund as an "annuity, or similar plan or contract" under the statute. Indeed, the Trustee's expert witness described the asset as an "insurance product."

Recognized rules of statutory construction support the Court's interpretation that Debtor's Annuity Contract does not fall within the scope of an "annuity, or similar plan or contract." In order to avoid defining a word within a statute so broadly that it is inconsistent with its accompanying words, courts can apply rules of statutory construction, such as *noscitur a sociis* and *ejusdem generis*, for interpretation. *See generally Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995). *See also State v. Brown*, 250 Ga.App. 376, 379, 551 S.E.2d 773, 776 (Ga.App.2001)(noting that *ejusdem generis* is a well-recognized rule of construction); *McKenzie v. Seaboard System R.R., Inc.*, 173 Ga.App. 402, 404, 326 S.E.2d 502, 504 (Ga.App.1985) (stating that when ascertaining the meaning of language in a statute, the canon of *noscitur a sociis* is as valid today as it was a century ago).

■ Applying the maxim *noscitur a sociis*, or the rule that a term is known from its associates, "annuity, or similar plan or contract" is used among "stock bonus, pension, profitsharing." "Stock bonus, pension, profitsharing" are forms of retirement benefits that are paid regularly based on a debtor's employment and wages or salary. In other words, they are all forms of deferred compensation for services rendered. Thus, "annuity, or similar plan or contract" refers to benefit plans offered to employees or the self-employed as a means of future compensation after retirement.

■ Further, the canon *ejusdem generis*, or the rule that general words in an enumeration are construed as similar to more specific words in the enumeration, supports the Court's interpretation of "annuity, or similar plan or contract." Since "stock bonus, pension, profitsharing" are the more specific words in the statute, they serve as a limitation on any interpretation of "annuity, or similar plan or contract." "Stock bonus, pension, profitsharing" identify plans or contracts that provide benefits in lieu of earnings after retirement, whether funded by the employer or self-employed. These are all plans with the sole purpose of replacing lost income after retirement through contributions paid into them over time. Thus, "annuity, or similar plan or contract" refers to a benefit that is restricted to providing after retirement income to the debtor.

Moreover, this interpretation of "annuity, or similar plan or contract" is consistent with the language and purpose of the federal exemption statute to exempt those benefits that provide the debtor wage substitute in the future. The Supreme Court's recent decision in *Rousey v. Jacoway* confirms this position. In *Rousey*, the Supreme Court addressed whether 11 U.S.C. § 522(d)(10)(E)(i)-(iii) allowed debtors to exempt IRAs from the bankruptcy estate. *Rousey v. Jacoway*, 544 U.S. 320, 125 S.Ct. 1561, 1564, 161 L.Ed.2d 563, 568 (2005). When determining whether IRAs were exempt, the Supreme Court considered the characteristics of the specific plans and contracts that were listed in section 522(d)(10)(E). *Id.* at 1568–69. Using the ordinary meaning of the terms, it concluded that the common feature of all the plans identified in the statute was that they provide income substitutes for wages earned as salary or hourly compensation. *Id.* at 1569. The Supreme Court further noted that this analysis comported with

the other types of funds a debtor could exempt under section 522(d)(10) such as social security benefits, unemployment compensation, unemployment benefits, public assistance, and veteran's benefits. *Id.*

In this case, the Annuity Contract is not similar to the types of funds exempt under section 522(d)(10). Even though it provides Debtor with future income, that income is not a substitute for wages earned as salary or hourly compensation to Debtor. Unlike pensions, profitsharing accounts, and IRAs where a debtor makes contributions regularly over an extended period of time, the Annuity Contract was purchased with a lump sum contribution of after-tax dollars for a return payout in the future. The Annuity Contract also has an insurance component to it. Thus, since the Annuity Contract does not serve to replace lost income of Debtor in the future, it is not an "annuity, or similar plan or contract."

■ Even if the fund before this Court could be classified as an "annuity, or similar plan or contract" under the statute, Section 522(d)(10)(E) of the Bankruptcy Code provides additional limitations on funds created by a debtor. Retirement investments are not exempt from the bankruptcy estate even if they are an "annuity, or similar plan or contract" where they (i) are established by an insider; (ii) make payments on account of age or length of services; and (iii) do not qualify under sections 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code. 11 U.S.C. § 522(b)(10)(E)(i)-(iii). Thus, when an insider establishes a fund whereby payments are based on age, the plan must be a qualified plan under the Internal Revenue Code to be exempt.

In this case, there is no dispute that the Annuity Contract was established by an

insider since Debtor funded the Contract with her inheritance. Additionally, the Supreme Court has determined that when an account has a nonforfeitable right to the balance held in it subject to a tax penalty for withdrawals before the accountholder attains the age of 59½, this is a limit on the "right to payment." *Rousey,* 125 S.Ct. at 1569. Thus, if this condition is removed when the accountholder turns 59½, the accountholder's right to the balance of the fund is a right to payment "on account of" age. *Id.* In this case, the Annuity Contract places a "penalty equal to 10% of the taxable distribution" on any distributions from the fund before Debtor reaches the age 59½. Thus, like the account in *Rousey,* payments under the Annuity Contract are "on account of age."

Since the Annuity Contract was established by an insider and makes payments on account of age, it can only be exempt under section 522(d)(10)(E) if it is a qualified plan under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code. Each of the plans under these sections have specified restrictions on contributions into the plan, distributions from the plan, and transfers of plan assets.

Section 401(a) of the IRC covers stock bonus, pension, and profit-sharing plans. It requires that for plans to be qualified for tax benefits under this section, contributions into the plan must be related to the employee's compensation, distributions from the plan must begin no later than April 1 of the calendar year in which the employee attains the age of 70½ or retires, and funds in the plan cannot be assigned or alienated. *See* I.R.C. § 401(a)(9)(C)(i)(I)-(II); I.R.C. § 401(a)(9)(E); I.R.C. § 401(a)(13)(A). Sections 403(a) and 403(b) of the I.R.C. address the taxability of qualified annuity plans purchased by an employer for the benefit of an employee. Qualifying annuities are subject to the same distribution requirements that are applicable to stock bonus, pension and profit sharing plans. I.R.C. § 403(a)(1) (incorporating I.R.C. § 404(a)(2) which applies I.R.C. §§ 401(a)(5); 401(a)(9) and 401(a)(13) to qualified annuity plans); and I.R.C. § 403(b)(10) (incorporating the qualifications of I.R.C. § 401(a)(9) into 403(b)(10)). Thus, payments to the employee from an annuity plan must also begin the later of the year in which the employee turns 70½ or retires. Similarly, I.R.C. § 408 covers the tax qualifications for individual retirement accounts and individual retirement annuities. This section also requires that distributions begin at 70½ and prohibits the transfer of individual retirement annuities by the owner. I.R.C. § 408(b)(1).

The Annuity Contract here is not a qualified plan under the specified sections of the I.R.C. First, it is more accurate to define the Annuity Contract as a "single premium deferred annuity contract" since the annuitant pays a premium and is guaranteed a return over a specified number of years. Even though the I.R.C. affords tax benefits to holders of some annuities, a single premium deferred annuity is not one qualified under the I.R.C. *In re Bogue,* 240 B.R. 742, 746 (Bankr.E.D.Wis.1999). In order to be qualified under the I.R.C., there must be some restrictions placed on funding, distributions, and transfers of the funds which are not present under the Annuity Contract. For example, the Annuity Contract allows Debtor, at any time during her lifetime, to assign the Contract or surrender it in whole or in part; amend or change the Contract; exercise any right and receive any benefit under the Contract; and make additional purchase payments into the fund. In addition to those privileges, Debtor can change the maturity date of the annuity at any time conditioned only by the requirement that she cannot defer payments beyond the year she turns

eighty-five. In fact, the Annuity Contract is closer in resemblance to other types of tax-deferred investments such as savings accounts and bonds than retirement investments.

Another important characteristic of exempt retirement funds noted by the Supreme Court in *Rousey* was the imposition of a deterrence mechanism for early withdrawals through a tax penalty on any amount withdrawn by the owner. *Rousey,* 125 S.Ct. at 1570. The Supreme Court emphasized the fact that the usage of tax penalties on distributed amounts for early withdrawals restrict the accountholder from unlimited access to the funds in the account. *Id.* Even though the Annuity Contract here imposes a 10% penalty for early withdrawals by Debtor, there is a distinction between this penalty and the one applied to the IRAs in *Rousey*. Under the Annuity Contract, the penalty only applies to withdrawals that include any *accumulation* in the fund above Debtor's initial investment of $50,000. In *Rousey,* the IRA imposed a penalty on the *full value* of the fund, making both the debtors' initial investment and earnings subject to the penalty. This distinction is significant because the Supreme Court placed value on the deterring effect of the penalty. If the penalty will only apply to earnings and not a debtor's initial investment, it is less likely that a debtor would be discouraged from withdrawing funds from the plan before the maturity date.

Additionally, as noted by the Trustee, this case is similar to *In re Herndon,* 102 B.R. 893 (Bankr.M.D.Ga.1989). The debtor in *Herndon* claimed an exemption under O.C.G.A. § 44–13–100(a)(2.1) for a voluntary tax shelter annuity sponsored by his employer but completely funded by the debtor. *Herndon,* 102 B.R. at 894. The *Herndon* court held that the annuity was not exempt under sections 44–13–100(a)(2.1)(A) or (2.1)(B) because the plan was not established and maintained by the state or a nonprofit organization. *Id.* at 895. As to (2.1)(C), the court noted that the plan was fully funded by the debtor instead of the debtor's employer. Thus, the annuity did not satisfy the requirements from exemption under section 44–13–100(a)(2.1).

*Herndon* is similar to Debtor's case. The plan in *Herndon* resembles the plan at issue in this case because it was a structured annuity that would serve as an income substitute in the future for the debtor. Additionally, like the annuity contributions in *Herndon* which were all made by the debtor, all of the contributions into the Annuity Contract in this case were made voluntarily by Debtor. Therefore, just as the annuity in *Herndon* was not exempt under O.C.G.A. § 44–13–100(a)(2.1) because it was not supported by the state, debtor's employer, or a nonprofit organization, the Annuity Contract in this case is not exempt.

Even though the Court does not question the good faith of Debtor, a general rule providing that annuities purchased by debtors are exempt from the claims of creditors if they are established as retirement vehicles sanctions abuse. Allowing an annuity contract established by a debtor to be exempt without some requirements that it be similar to other qualified retirement plans would provide debtors with a means of shielding assets from creditors prebankruptcy by purchasing annuities under the facade of retirement planning. The Annuity Contract in this case is no different than a savings account created on the premise that the funds placed in the account are to provide Debtor with future income since Debtor can withdraw funds from the Annuity Contract at anytime with only a minimal penalty. Exempting an annuity of this nature would

open the doors for abuse by debtors and undermine the integrity of the bankruptcy process.

## CONCLUSION

For the reasons discussed above, the Court sustains Trustee's Objection to Debtor's claimed exemption of the variable life annuity.

The Clerk's Office is directed to serve a copy of this Order upon Debtors, Debtors' attorney, and Trustee.