## S12Q1936. SILLIMAN v. CASSELL.
### (738 SE2d 606)

THOMPSON, Presiding Justice.

In this case involving the interpretation of OCGA § 44-13-100 (a) (2) (E)[1] and the exemption of an annuity from a debtor's bankruptcy estate, the United States Court of Appeals for the Eleventh Circuit certified the following questions to this Court: (1) is a single-premium fixed annuity purchased with inherited funds an "annuity" for purposes of OCGA § 44-13-100 (a) (2) (E); and (2) is a debtor's right to receive a payment from an annuity "on account of . . . age" for the purposes of OCGA § 44-13-100 (a) (2) (E) if the annuity payments are subject to age-based federal tax treatment, if the annuitant purchased the annuity because of age, or if the annuity payments are calculated based on the age of the annuitant at the time the annuity was purchased.

For the reasons that follow, we find that a single-premium fixed annuity purchased with inherited funds may qualify as an exempt annuity under OCGA § 44-13-100 (a) (2) (E) and that the determination of whether a right to receive payment from an annuity is "on account of" age for purposes of OCGA § 44-13-100 (a) (2) (E) is not necessarily based on the existence of a single factor but requires consideration of a variety of factors pointing to the existence of a causal connection between the payee's age and the right to payment.

### *Facts*

1. As set forth in the opinion of the Eleventh Circuit Court of Appeals and revealed in the record, in 2008 Lou Ann Cassell inherited $220,000 from a relative. After consulting with advisors, she used the inherited funds in May 2009 to purchase a single-premium fixed annuity from National Life Insurance Company. Cassell was 65 years old at the time she purchased the annuity. The annuity agreement provides that beginning in June 2009 and until the time of her death, Cassell shall receive monthly annuity payments of $1,389.14. The agreement guarantees payments for ten years regardless of when Cassell dies and names her children as beneficiaries should she die within the guaranteed payment period. Cassell is not authorized to withdraw any funds from the annuity, cancel the annuity, or change the payment terms of the agreement. She is authorized to

---

[1] This section of the Georgia Code provides that a bankruptcy debtor may exempt from the bankruptcy estate the debtor's right to receive "[a] payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

assign the right to the annuity payments and to change the name of her beneficiaries during the guaranteed period.

On May 11, 2010, Cassell filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Northern District of Georgia and she included the annuity as an asset. However, she also listed the annuity as exempt property under OCGA § 44-13-100 (a) (2) (E). The trustee objected, arguing the annuity payments did not meet two of the requirements necessary to qualify for the statutory exemption, specifically that the annuity was not funded by employment related wages or benefits and the payments due under the annuity were not "on account of age." The bankruptcy court disagreed and entered an order concluding that the two challenged requirements were met. It did not make a ruling with regard to the third requirement, that the payments be reasonably necessary for the support of the debtor or her dependents, because it concluded the parties had provided insufficient evidence pertaining to that issue. The United States District Court affirmed on appeal and remanded to the bankruptcy court for it to rule on the issue not addressed in its original order. Rather than litigate that issue in the bankruptcy court, the trustee conceded the National Life annuity was reasonably necessary for the support of Cassell and appealed to the Eleventh Circuit Court of Appeals. After briefing and oral argument by the parties, the Eleventh Circuit recognized the absence of precedent on the dispositive issues of state law and certified its questions to this Court.

## Legal Analysis

2. Upon the filing of a petition for bankruptcy, "all legal or equitable interests of the debtor in property" become part of the bankruptcy estate. 11 USC § 541 (a) (1). Bankruptcy debtors may exempt certain property from their bankruptcy estate consistent with bankruptcy's goal of ensuring that a debtor retains sufficient property to obtain a fresh start. 11 USC § 522 (b). See *Marrama v. Citizens Bank of Mass.*, 549 U. S. 365, 367 (127 SC 1105, 166 LE2d 956) (2007) (principal purpose of Bankruptcy Code is to grant a fresh start to the debtor). Although federal bankruptcy laws provide for such exemptions, a state may opt out of the federal exemption scheme and provide its own exemptions for debtors domiciled within that state. See 11 USC § 522 (b) (2), (d). Because Georgia has opted out of the federal exemption scheme, Georgia bankruptcy debtors are entitled to claim only those statutory exemptions allowed under Georgia law. *In re Bramlette*, 333 BR 911, 915 (Bankr. N.D. Ga. 2005).

Here, Cassell contends the National Life annuity payments are exempt from inclusion in her bankruptcy estate pursuant to OCGA §

44-13-100 (a) (2) (E). That subsection provides, in pertinent part, that any debtor who is a natural person may exempt, for purposes of bankruptcy, the debtor's right to receive:

> [a] payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

To be exempt under this provision, the National Life annuity must meet three requirements: (1) it must be an annuity; (2) the right to receive the annuity payments must be "on account of illness, disability, death, age, or length of service"; and (3) the payments must be reasonably necessary to support Cassell or her dependents.[2]

### *Is the National Life Annuity an Annuity For Purposes of OCGA § 44-13-100 (a) (2) (E)?*

As recognized by the Eleventh Circuit, there is no Georgia authority interpreting OCGA § 44-13-100 (a) (2) (E) or more specifically, what constitutes an annuity for purposes of that subsection. Construed according to its plain and ordinary meaning, an "annuity" is "[a]n obligation to pay a stated sum, usually monthly or annually to a stated recipient." Black's Law Dictionary 88 (7th ed. 1999). See *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003) (attributing plain and ordinary meanings to words of a statute). This dictionary definition is consistent with the manner in which our legislature has defined "annuity" in other statutes. See OCGA § 33-28-1 (1) (defining "annuity" as "a contract by which one party in return for a stipulated payment or payments promises to pay periodic installments for a stated certain period of time or for the life or lives of the person or persons specified in the contract"); OCGA § 47-2-1 (3) (defining "annuity" as "annual payments for life derived from the accumulated contributions of a member"); OCGA § 47-3-1 (3) (same).

Additional guidance as to the meaning of the term "annuity" is provided by cases interpreting 11 USC § 522 (d) (10) (E), the federal exemption statute upon which OCGA § 44-13-100 (a) (2) (E) was modeled.[3] For purposes of 11 USC § 522 (d) (10) (E), the United States Supreme Court has defined an annuity as "an amount payable yearly

---

[2] As stated, the trustee concedes the National Life annuity satisfies this third requirement.

[3] 11 USC § 522 (d) (10) (E) exempts from the bankruptcy estate the debtor's right to receive

or at other regular intervals for a certain or uncertain period." (Punctuation omitted.) *Rousey v. Jacoway*, 544 U. S. 320, 330 (125 SC 1561, 161 LE2d 563) (2005). Based on this authority and construing the language of OCGA § 44-13-100 (a) (2) (E) according to its plain and ordinary meaning, we conclude that for purposes of OCGA § 44-13-100 (a) (2) (E) an annuity is an obligation to pay an amount at regular intervals for a certain or uncertain period of time.

If we were to apply only this definition of annuity for purposes of OCGA § 44-13-100 (a) (2) (E), every annuity regardless of its origin or purpose would be exempt from a debtor's bankruptcy estate and protected from creditors. We do not believe this is the result intended by our legislature when it adopted OCGA § 44-13-100 (a) (2) (E). OCGA § 44-13-100 (a) (2) (E), like its federal counterpart, exempts from a debtor's bankruptcy estate only those payments due under a "pension, annuity, or similar plan or contract." Courts have limited the similar language in both the federal and state exemption schemes to mean that a debtor's interest in an annuity, contract or similar plan may qualify for the exemption if it is intended to "provide income that substitutes for wages." *Rousey*, supra, 544 U. S. at 331; *Bramlette*, supra, 333 BR at 920-921; *In re Andersen*, 259 BR 687, 690-691 (8th Cir. Bankr. App. Panel 2001). See also *In re Jadud*, 2012 Bankr. LEXIS 4723 (Bankr. N.D. Oh. 2012) (not every contract labeled as an annuity qualifies for exemption); *In re Michael*, 339 BR 798, 803 (Bankr. N.D. Ga. 2005) (not every annuity qualifies for OCGA § 44-13-100 (a) (2) (E) exemption). In *Rousey*, the Court determined that an individual retirement account (IRA) which provided income to the debtors after a certain age qualified as an exempt plan under § 522 (d) (10) (E) of the Bankruptcy Code. *Rousey*, supra, 544 U. S. at 334-335. The Court reached this conclusion by examining common features of the enumerated exempt plans, explaining that

[t]he common feature of all of these plans is that they provide income that substitutes for wages earned as salary or hourly compensation.

a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless —

    (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

    (ii) such payment is on account of age or length of service; and

    (iii) such plan or contract does not qualify under section 401 (a), 403 (a), 403 (b), or 408 of the Internal Revenue Code of 1986.

Id. at 331. The Court found this understanding of the plans' similarities consistent with other payments exempt under 11 USC § 522 (d) (10), i.e., social security benefits, unemployment compensation, public assistance, veterans' benefits, alimony, support or separate maintenance, all of which relate to income that substitutes for wages. Id. See also H.R. Rep. No. 95-595, at 362 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 6318 (purpose of 11 USC § 522 (d) (10) (E) is to "exempt[ ] certain benefits that are akin to future earnings of the debtor").

Like 11 USC § 522 (d) (10), OCGA § 44-13-100 (a) (2) exempts from bankruptcy a debtor's right to receive social security benefits, unemployment compensation, public assistance benefits, retirement benefits, disability, illness or unemployment benefits, alimony, support or separate maintenance, and payments under a pension, annuity, or similar plan or contract. We agree with the Supreme Court that the common feature of all of these plans is that they provide income that substitutes for wages. Accordingly, we conclude that in deciding whether a particular annuity is of the type intended to come within the OCGA § 44-13-100 (a) (2) (E) exemption, the pertinent question is whether it provides income as a substitute for wages.

To make this determination, courts must consider the nature of the contract giving rise to the annuity, as well as the facts and circumstances surrounding the purchase of the annuity. In *Rousey*, the Court considered several factors relevant to its determination that an IRA was an exempt plan, including the fact that the IRA distributions were to begin at the latest at a time when the account holders were likely to be retired and lack wage income, the Internal Revenue Code provided tax benefits and penalties for the IRAs that encouraged the account holders to wait until retirement to withdraw funds, and tax penalties would be imposed upon the account holders if they failed to take the requisite minimum distribution, thus ensuring that account holders would use the funds during their retirement years. Id. at 331-332. In *Andersen*, supra, 259 BR at 691-692, an opinion often cited by courts when determining whether a plan or contract is of the type exempt from the bankruptcy estate, the court similarly found no single factor determinative. The court instead considered a variety of factors, including whether the payments were intended to substitute for wages, whether the contributions were made over time, whether the debtor may exercise control over the asset, and whether the investment was part of a pre-bankruptcy planning scheme. Id.

Our analysis of these considerations leads us to conclude that the National Life annuity is designed to provide income as a substitute for wages. At the time Cassell purchased the annuity with her

inheritance, she was self-employed and did not have access to an employer-funded retirement or pension plan. She testified she purchased the annuity to replace her income given her age at the time of purchase, 65, and to support her in her retirement. Consistent with this intent, she purchased a fixed-sum life annuity, giving her the right to immediate monthly payments but at the same time divesting her of the right to withdraw the corpus of the annuity. Thus, once the payments began and at the time of filing of her bankruptcy petition, Cassell was entitled only to the payments from the annuity and she had no authority over either the corpus or the amount or frequency of payments from the annuity.

Based on these facts, we reject the trustee's argument that the National Life annuity cannot be an exempt annuity because it was funded by an inheritance. Although the trustee cites several bankruptcy cases from other jurisdictions which focus on the source of funds in determining whether an annuity, contract, or plan qualifies for the 11 USC § 522 (d) (10) (E) or a similar state exemption, these cases rest on the mistaken premise that the determinative factor is the source of funds used to purchase the annuity. See *In re Green,* 2007 Bankr. LEXIS 1182 (Bankr. E.D. Tenn. 2007) (holding payments received under annuity purchased with proceeds from settlement of wrongful death action not exempt because proceeds not intended as substitute for wages); *In re Michael,* supra, 339 BR at 804 (holding annuity not exempt because it was purchased in a lump sum with proceeds of inheritance). As stated, the common factor among exempt plans is that they provide a substitute for wages. In fact, a careful review of *Rousey* reveals that the Court acknowledged that the enumerated exempt plans may be established or funded by different sources, but that the source of funds constituted a nondisqualifying difference.[4] *Rousey,* supra, 544 U. S. at 331.

We similarly reject the trustee's argument that the National Life annuity is not exempt because Cassell exercised too much control over it. Contrary to the trustee's argument, Cassell's ability to choose among several different plans for investment at the time she purchased the annuity is not significant. What is relevant and legally significant in this analysis is the nature of the plan actually selected

---

[4] That is not to say that the source of funds cannot be a relevant consideration in a court's determination of whether an annuity or similar plan is intended as a substitute for wages, only that the source of funds is not by itself determinative of this issue. For example, in *In re Vickers,* 408 BR 131, 140-142 (Bankr. E.D. Tenn. 2009), the court considered significant the fact that the annuity for which an exemption was claimed was purchased with funds held within and obtained directly from a self-employed IRA fund. See also *In re Kiceniuk,* 2012 Bankr. LEXIS 4616 (Bankr. D.N.J. 2012) (annuity funded by the transfer of monies from the debtor's employment related 401(k) to which she contributed regularly).

and the level of control a payee retains over the funds and payments thereafter. See *Rousey*, supra, 544 U. S. at 331 (acknowledging that an individual may establish and contribute to an annuity on the terms and conditions he elects). The limited authority Cassell retains over the National Life annuity does not change the underlying character of the annuity as a plan intended to provide a substitute for wages. Compare *Bramlette*, supra, 333 BR at 921 (annuity not exempt where debtor retained discretion to withdraw from corpus and to decide at later date to receive fixed return on investment); *In re Michael*, supra, 339 BR at 805 (annuity not exempt where debtor retained authority to surrender, assign, or amend annuity at any time and to exercise any right and receive any benefit under the contract). Finally, we note, as did both the bankruptcy and district courts, "the similar level of control permitted to the debtor with this annuity and the level of control permitted to debtors over age 65 with IRA's and other retirement vehicles that are clearly exemptible." District Court Order at 5. See Bankruptcy Court Order at 14, 17.

Working against Cassell in this analysis is the fact that she purchased the annuity just one year before the filing of her bankruptcy petition and that her investment was not made over an extended period of time. We, however, do not consider these factors sufficiently compelling in this case to satisfy the trustee's burden of proving by a preponderance of the evidence that the payments were not intended to substitute for wages. See Fed. Bankr. R. 4003 (c). There is no evidence that the National Life annuity was purchased as part of a pre-bankruptcy plan to exempt assets from the bankruptcy estate. In addition, Cassell's testimony that she was current on both personal and business expenses at the time the annuity was purchased and that she intended to use the annuity payments as a substitute for wages in her retirement is uncontradicted in the record before us.

*Is the Right to Receive Payment under the National Life Annuity "on Account of" Age?*

3. The second issue to be decided is whether Cassell's right to receive annuity payments is on account of age for purposes of OCGA § 44-13-100 (a) (2) (E). Again, we find the Supreme Court's decision in *Rousey* instructive. There, the Supreme Court considered the plain meaning of the phrase "on account of" as used in 11 USC § 522 (d) (10) (E) and interpreted it to be the equivalent of "because of." The Court thus held that to be exempt from the bankruptcy estate, the right to payments from an IRA must be made "because of" illness, disability, death, age, or length of service. See *Rousey*, supra,

544 U. S. at 326-327. The rationale used by the *Rousey* Court to interpret and apply the "on account of" language found in 11 USC § 522 (d) comports with our general rules of statutory construction and provides a straightforward framework for courts to follow in determining whether an annuity or similar plan or contract qualifies for the OCGA § 44-13-100 (a) (2) (E) exemption. Nothing in the language of OCGA § 44-13-100 (a) (2) (E) indicates an intent by the legislature to apply a meaning different from the causal connection recognized by the Court in *Rousey*, and contrary to the trustee's argument, nothing in that section indicates an intent to limit application of the exemption to annuities purchased before the payee attains a certain age. Accordingly, we hold that a debtor's right to receive payments from an annuity is "on account of" age if there exists a causal connection between the right to payment and the debtor's age.

The requisite connection may be established in a myriad of ways, proof of which is limited only by the circumstances under which the annuity is created and the terms and conditions of the annuity itself. In *Rousey*, the Court found the connection sufficient where the debtors' access to funds was limited in a significant way based on their ages. *Rousey*, supra, 544 U. S. at 327-328. In *Andersen*, the court found determinative the fact that the commencement date of benefit payments was related to the debtor's age and that the debtor lost the ability to withdraw or surrender the annuity's value, retaining only the right to change the beneficiary who would receive payments if she died before a certain date. Id., 259 BR at 693-694. Here, both the bankruptcy and district courts found the "on account of age" requirement was met because the National Life annuity contained penalties for withdrawal prior to a specific age. There also is evidence that the fixed periodic payment of $1,389.14 was calculated based, in part, on Cassell's age at the time she purchased the annuity contract and that the annuity funds and/or payments may be entitled to certain tax advantages due to her age. See OCGA § 48-7-27 (a) (5) (A)-(E) (providing exclusion of up to $65,000 for retirement income, including annuity income, for taxpayers age 65 and older). These factors lead us to agree with the bankruptcy and district courts that for purposes of OCGA § 44-13-100 (a) (2) (E), Cassell's right to receive payments under the National Life annuity are "on account of" age.

Although the second question certified by the Circuit Court asks whether certain factors are independently sufficient to establish the requisite causal connection between a payee's age and the right to payment, we find it unnecessary to address that issue. Rather, the causal connection is established in this case through the amalgamation of evidence related to several different factors. We note generally,

however, that when determining whether a right to receive payment is "on account of age," courts should focus on whether the *right* to payment is causally connected to the payee's age, not on the payee's *intent* in purchasing the annuity. See *Rousey*, supra, 544 U. S. at 326-327 ("on account of" requires that *right* to receive payment be because of illness, disability, death, age or length of service).

*Certified questions answered. All the Justices concur, except Melton, J., who dissents.*

MELTON, Justice, dissenting.

Because Cassell's annuity was funded by an inheritance, I cannot agree with the majority's erroneous conclusion that the annuity in this case provided income to Cassell as a substitute for earned wages. Accordingly, I do not agree that the annuity here qualifies as exempt property for purposes of bankruptcy pursuant to OCGA § 44-13-100 (a) (2) (E).

Under OCGA § 44-13-100 (a) (2) (E):

[A]ny debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, . . . payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]

As the United States Supreme Court has made clear, payment plans that would be exempted for purposes of bankruptcy include those that "provide income that substitutes for wages earned as salary or hourly compensation." *Rousey v. Jacoway*, 544 U. S. 320, 331 (II) (B) (125 SC 1561, 161 LE2d 563) (2005). For example, social security benefits; unemployment compensation or benefits; a local public assistance benefit; veterans' benefits; disability or illness benefits; and alimony, support, or separate maintenance would all qualify as exempt payments for purposes of bankruptcy, as they all act as "substitutes for wages." Id. See also OCGA § 44-13-100 (a) (2). Similarly, "benefit plans offered to employees *or the self-employed*[5] as a means of *future* compensation after retirement" would qualify for exempt status because they have "the sole purpose of replacing lost income after retirement through contributions paid into them over time." *In re Michael*, 339 BR 798, 803-804 (Bankr. N.D. Ga. 2005).

---

[5] Contrary to the majority's analysis, the fact that Cassell was self-employed and did not have access to an employer-funded retirement plan is irrelevant, as other instruments exist for the self-employed to plan for retirement well before reaching retirement age.

Unlike any of the aforementioned types of payments, an inheritance has nothing to do with replacing lost income from an earned salary or an hourly wage. Rather, much like a winning lottery ticket, it is merely a *windfall* that immediately benefits the person receiving the funds, regardless of any salary or wages that the person may have earned during their working years or the age at which they received the inheritance. It makes no difference whether or not the inheritance is being collected through deferred payments as an "annuity," even after one has reached retirement age, because,

> [i]f a debtor, whether of retirement age or not, could exempt any annuity payments he received, he could buy an annuity with his inheritance and thus exempt it from his estate. That would create a hole in [OCGA § 44-13-100 (a) (2) (E)] through which its legislative intent could be drained, and courts that have considered such a scenario have understandably rejected [such an] argument.

*In re Green*, 2007 Bankr. LEXIS 1182 (Bankr. E.D. Tenn. 2007). Indeed, in exempting certain benefits from the reach of bankruptcy, the legislature was not aiming to provide a vehicle through which anyone could simply set up an "annuity" to protect their assets from the consequences of bankruptcy. Only those annuities that replace lost income by being "akin to future earnings" are exempted. *Green*, supra, at *5. Such "annuities" "must be something like a retirement annuity, one funded by money traceable to wages or some other employment benefit rather than one purchased with monies entirely extrinsic to employment." Id. See also *Rousey*, supra, 544 U. S. 320 (Where bankruptcy petitioners had deposited money from their *employer-sponsored pension plans* into Individual Retirement Accounts (IRAs), the IRAs qualified as exempt property for purposes of bankruptcy.). To conclude otherwise would allow a person to unjustly exempt income that should be available to pay just bankruptcy debts simply by purchasing an otherwise qualifying annuity. Because the annuity here was purchased with inherited funds that had nothing to do with earned wages or some other employment benefit, it is not the type of annuity that would be exempted for purposes of bankruptcy pursuant to OCGA § 44-13-100 (a) (2) (E).

I therefore respectfully dissent from the majority.

DECIDED FEBRUARY 18, 2013.

*Schulten, Ward & Turner, Martha A. Miller*, for appellant.
*Eric E. Thorstenberg*, for appellee.