## S16Q0895. MOONEY v. WEBSTER.
(794 SE2d 31)

HINES, Presiding Justice.

This appeal is before this Court on certified questions from the United States Court of Appeals for the Eleventh Circuit[1] in a Chapter 7 bankruptcy case which raises the issue of whether Georgia law exempts the funds in a health savings account ("HSA") from inclusion in the bankruptcy estate.

The questions certified are:

(1) Does a debtor's health savings account constitute a right to receive a "disability, illness, or unemployment benefit" for the purposes of OCGA § 44-13-100 (a) (2) (C)?

(2) Does a debtor's health savings account constitute a right to receive a "payment under a pension, annuity, or similar plan or contract" for the purposes of OCGA § 44-13-100 (a) (2) (E)?

---

[1] 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9.

(3) Is a debtor's right to receive a payment from a health savings account [one] "on account of illness [or] disability" for the purposes of OCGA § 44-13-100 (a) (2) (E)?

We answer the first and second questions in the negative, and consequently, the third question need not be addressed.

## Background

In general, when a debtor files a bankruptcy petition as in the case at bar, the debtor's property becomes part of the bankruptcy estate. See 11 USC § 541 (a).[2] However, certain property may be exempted from the bankruptcy estate pursuant to applicable federal or state law. As authorized by 11 USC § 522 (b) (2),[3] Georgia has opted

---

[2] 11 USC § 541 (a) provides:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

(2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is —

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

(3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

(4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date —

(A) by bequest, devise, or inheritance;

(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

[3] 11 USC § 522 (b) (1) and (2), in relevant part, provide:

Notwithstanding section 541 of this title, an individual debtor may exempt from

out of the federal bankruptcy exemptions in favor of exemptions under state law; consequently, for debtors who are residents of Georgia, the applicable exemptions are those set forth in OCGA § 44-13-100 (a).[4]

---

property of the estate the property listed in . . . paragraph (2). . . . (2) Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.

[4] OCGA § 44-13-100 (a) provides in full:

(a) In lieu of the exemption provided in Code Section 44-13-1, any debtor who is a natural person may exempt, pursuant to this article, for purposes of bankruptcy, the following property:

(1) The debtor's aggregate interest, not to exceed $21,500.00 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor. In the event title to property used for the exemption provided under this paragraph is in one of two spouses who is a debtor, the amount of the exemption hereunder shall be $43,000.00;

(2) The debtor's right to receive:

(A) A social security benefit, unemployment compensation, or a local public assistance benefit;

(B) A veteran's benefit;

(C) A disability, illness, or unemployment benefit;

(D) Alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E) A payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor; and

(F) A payment from an individual retirement account within the meaning of Title 26 U.S.C. Section 408 to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(2.1) The debtor's aggregate interest in any funds or property held on behalf of the debtor, and not yet distributed to the debtor, under any retirement or pension plan or system:

(A) Which is: (i) maintained for public officers or employees or both by the State of Georgia or a political subdivision of the State of Georgia or both; and (ii) financially supported in whole or in part by public funds of the State of Georgia or a political subdivision of the State of Georgia or both;

(B) Which is: (i) maintained by a nonprofit corporation which is qualified as an exempt organization under Code Section 48-7-25 for its officers or employees or both; and (ii) financially supported in whole or in part by funds of the nonprofit corporation;

(C) To the extent permitted by the bankruptcy laws of the United States, similar benefits from the private

As stated, the property at issue is a HSA. HSAs are creations of

---

sector of such debtor shall be entitled to the same treatment as those specified in subparagraphs (A) and (B) of this paragraph,

provided that the exempt or nonexempt status of periodic payments from such a retirement or pension plan or system shall be as provided under subparagraph (E) of paragraph (2) of this subsection; or

(D) An individual retirement account within the meaning of Title 26 U.S.C. Section 408;

(3) The debtor's interest, not to exceed the total of $5,000.00 in value, in all motor vehicles;

(4) The debtor's interest, not to exceed $300.00 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor. The exemption of the debtor's interest in the items contained in this paragraph shall not exceed $5,000.00 in total value;

(5) The debtor's aggregate interest, not to exceed $500.00 in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(6) The debtor's aggregate interest, not to exceed $1,200.00 in value plus any unused amount of the exemption, not to exceed $10,000.00, provided under paragraph (1) of this subsection, in any property;

(7) The debtor's aggregate interest, not to exceed $1,500.00 in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor;

(8) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract;

(9) The debtor's aggregate interest, not to exceed $2,000.00 in value, less any amount of property of the estate transferred in the manner specified in Section 542(d) of U.S. Code Title 11, in any accrued dividend or interest under, or loan or cash value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent;

(10) Professionally prescribed health aids for the debtor or a dependent of the debtor; and

(11) The debtor's right to receive, or property that is traceable to:

(A) An award under a crime victim's reparation law;

(B) A payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(C) A payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(D) A payment, not to exceed $10,000.00, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent; or

(E) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor

the Internal Revenue Code and were authorized by Congress in the Medicare Prescription Drug, Improvement, and Modernization Act of 2003. See Pub. L. 108-173, § 1201, 117 Stat. 2066, 2469-2479 (2003). Georgia allowed the creation of HSAs in 2008. See Ga. L. 2008, p. 463. Essentially, HSAs encourage individuals who have high deductibles in their health insurance plans to save for their healthcare costs by providing tax-preferred treatment for such savings. See 26 USC § 223 (a).[5] Disbursements from a HSA for anything other than qualified medical expenses generally are taxable as gross income and at an additional rate of 20%. See 26 USC § 223 (f) (4) (A).[6]

### Proceedings in Federal Court

The certified questions arise from the voluntary Chapter 7 bankruptcy petition filed by debtor Denise Mooney in the United States Bankruptcy Court for the Middle District of Georgia ("Bankruptcy Court") on June 27, 2013. In her Schedule B disclosures, Mooney listed her HSA, valued at $17,570.93. And, on her Schedule C filing, Mooney claimed an exemption from the bankruptcy estate for the full value of her HSA, pursuant to OCGA § 44-13-100 (a) (2) (C) and (E). Subsection (a) (2) (C) of the statute exempts the debtor's right to receive "[a] disability, illness, or unemployment benefit," and subsection (a) (2) (E) exempts "[a] payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor[.]"

On August 29, 2013, the Chapter 7 Trustee, Joy Webster, objected to the HSA exemption. Following an evidentiary hearing on the objection, on January 6, 2014, the Bankruptcy Court issued a memorandum opinion sustaining Webster's objection to Mooney's claimed HSA

---

is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

[5] 26 USC § 223 (a) provides:

Deduction allowed. In the case of an individual who is an eligible individual for any month during the taxable year, there shall be allowed as a deduction for the taxable year an amount equal to the aggregate amount paid in cash during such taxable year by or on behalf of such individual to a health savings account of such individual.

[6] 26 USC § 223 (f) (4) (A) provides:

Additional tax on distributions not used for qualified medical expenses.

(A) In general. The tax imposed by this chapter on the account beneficiary for any taxable year in which there is a payment or distribution from a health savings account of such beneficiary which is includible in gross income under paragraph (2) shall be increased by 20 percent of the amount which is so includible.

exemption. In so doing, the Bankruptcy Court found as fact, inter alia, that Mooney was self-employed as a physical therapist; she testified that she had worked for 37 years in the healthcare field, and had no immediate plans to retire; in 2008, she opened her HSA to help pay for medical expenses not covered by her health insurance; she used her personal checking account to fund the HSA, and paid all of her out-of-pocket healthcare expenses from the HSA; all disbursements from the HSA were used to pay medical expenses with one exception in 2011 when she withdrew $1,000 from the HSA that was erroneously deposited in it in excess of the statutory annual contribution limit; and she testified that she was never notified by her bank that any of her HSA disbursements were made for an improper purpose.

Mooney appealed the Bankruptcy Court's adverse ruling to the United States District Court for the Middle District of Georgia ("District Court"), and the District Court entered an order affirming the memorandum opinion of the Bankruptcy Court. Mooney then appealed the District Court's order to the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), and the Eleventh Circuit certified the above-stated questions after determining that the case turns on an interpretation of Georgia law, i.e., whether the exemptions set forth in OCGA § 44-13-100 (a) (2) (C) and (E) include HSA funds.

## Discussion

As a threshold matter, OCGA § 44-13-100 (a) does not contain any express exemption for HSAs; this is so even though the statutory provision specifies numerous exemptions including those for precisely identified "benefits." See footnote 4, supra. The General Assembly has had ample opportunity to expressly add HSAs to the lengthy list of exemptions, but has chosen not to do so; in fact, the General Assembly has amended the exemption statute four times since the authorization of HSAs in 2008.[7] This Court is mindful of the long-recognized doctrine of statutory construction, expressio unius est exclusio alterius, which discourages judicial recognition of exceptions not specifically set forth in a legislative enactment when other exceptions are expressly stated. See *Walker v. Walker*, 28 Ga. 140, 156 (1859); *Allstate Life Ins. Co. v. Miller*, 424 F3d 1113, 1116 n. 3 (11th

---

[7] Ga. L. 2012, Act 722, § 2, eff. May 2, 2012 (amendment to increase homestead exemption amount); Ga. L. 2013, Act 33, § 44, eff. April 24, 2013 (amendment to revise punctuation); Ga. L. 2013, Act 328, § 2, eff. July 1, 2013 (amendment to increase vehicle exemption amount); Ga. L. 2015, Act 167, § 6-1, eff. July 1, 2015 (amendment to increase amount of debtor's aggregate interest in certain property).

Cir. 2005). Indeed, as the Bankruptcy Court stated, absent from OCGA § 44-13-100 (a) is the "unequivocal expression of legislative intent" regarding the exemption of HSAs, that is, they are not specifically named as exempt. This sets the stage for the arguments made by debtor Mooney and the questions framed by the Eleventh Circuit.

The next step in the analysis is the consideration of whether a HSA is a "disability, illness, or unemployment benefit" for the purpose of the exemption provided in OCGA § 44-13-100 (a) (2) (C). In this Court's consideration of the meaning of the text of a statute, we are to presume that the General Assembly "meant what it said and said what it meant"; consequently, the statutory text is to be given its "plain and ordinary meaning," viewed in the "context in which it appears." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). In other words, the text is to be read in its "most natural and reasonable way." Id. Even though OCGA § 44-13-100 (a) (2) (C) sets forth three types of "benefits," the narrower question in the present case is whether a HSA is a "benefit" in regard to "illness."[8] As noted by the Bankruptcy Court, Webster's Dictionary has defined "benefit" as "something that promotes well-being," a "useful aid," "financial help in time of sickness, old age, or unemployment," or "payment or service provided for under an annuity, pension plan, or insurance policy." Merriam Webster's Collegiate Dictionary 106 (10th ed. 1994).[9] Webster's has defined "illness" as "an unhealthy condition of body or mind[.]" Webster's at 577. Such definitions are in accord with the plain language of subsection (a) (2) (C), and lead to the reasonable conclusion that the General Assembly did not intend for it to include a HSA. Certainly, it can be argued that a HSA fits within the ordinary understanding of the term "benefit" as help or assistance insofar as providing savings for the payment of medical expenses, and certainly if used properly it can result in favorable tax consequences; but, this is not the end of the inquiry. Again, subsection (a) (2) (C) does not provide for "benefit" in isolation, but rather, for the purposes of this

---

[8] Both the memorandum opinion by the Bankruptcy Court and the District Court order affirming it make plain that Mooney's argument for exemption under subsection (a) (2) (C) was that her HSA was an "illness" benefit. Indeed, there is no indication that any funds in her HSA were used on account of "disability." Consequently, there was no substantive analysis in regard to the HSA as a "disability" benefit, and inasmuch as the focus of appellant Mooney's argument before this Court in regard to subsection (a) (2) (C) is that her HSA is an "illness" benefit, this Court need not also address the HSA as a "disability" benefit.

[9] It is also noteworthy that Black's Law Dictionary has defined "benefit" primarily as an "advantage; privilege"; it secondarily has defined the term as "[f]inancial assistance that is received from an employer, insurance, or a public program (such as social security) in time of sickness, disability, or unemployment." Black's Law Dictionary 150-151 (7th ed. 1999).

case, in the context of "illness."[10] And, as the Bankruptcy Court found, HSAs are not necessarily illness benefits or HSA funds paid on account of illness because HSAs may also be used for "diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body," which are uses not dependent on the beneficiary being ill. 26 USC § 213 (d) (1) (A).[11] Thus, HSA funds have a much broader purpose than the restricted "benefits" stated in subsection (a) (2) (C).

Perhaps even more significantly, in construing a statute this Court is to read different sections of the same statute in a consistent and harmonious manner, in the context of the entire scheme of the statute and in an attempt to gather the legislative intent from the statute as a whole. *Footstar, Inc. v. Liberty Mut. Ins. Co.*, 281 Ga. 448, 450 (637 SE2d 692) (2006). What is more, this Court is to construe a statute "with our most analogous statutory construction precedents in mind." *In the Interest of M. D. H.*, 300 Ga. 46, 53 (793 SE2d 49) (2016). Thus, subsections (a) (2) (C) and (a) (2) (E) must be construed consistently with each other and with the applicable precedent of this Court.

In *Silliman v. Cassell*, 292 Ga. 464 (738 SE2d 606) (2013), this Court was called upon to interpret OCGA § 44-13-100 (a) (2) (E), in the context of the exemption of a single-premium fixed annuity from the debtor's bankruptcy estate. Citing *Rousey v. Jacoway*, 544 U. S. 320 (125 SCt 1561, 161 LE2d 563) (2005), this Court determined that the "common feature" of all of the plans found to qualify for exemption under subsection (a) (2) (E), and indeed for all of the exemptions listed in subsection (a) (2), is that they "relate to income that substitutes for wages"; consequently, we concluded that the pertinent question in regard to exemption is whether the entity in question "provides income as a substitute for wages." *Silliman v. Cassell*, supra at 467-468. Thus, the relevant inquiry becomes whether a HSA, when used for its appropriate purpose as in the case at bar, is intended as a substitute for wages. And, plainly it is not. Penalties associated with early withdrawal of the funds are forever applicable, the funds are never taxed if used for qualified healthcare costs, and the funds

---

[10] Compare *In re Berdecia-Rodriquez*, Case No. 16-60400-13, 2016 WL 5763378 (Bankr. D. Mont. Sept. 30, 2016), cited by appellant Mooney, in which the Montana bankruptcy court concluded that HSAs were exempt from the bankruptcy estate pursuant to a Montana statutory provision, MCA § 25-13-608 (1) (f), as construed by the Montana Supreme Court as linking the term "benefits" to exclusive use of the HSA funds to "pay for medical, surgical, or hospital care."

[11] 26 USC § 213 (d) (1) (A) provides:

Definitions. For purposes of this section — The term "medical care" means amounts paid — for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body[.]

roll over from year to year without tax penalty. Indeed, if the HSA funds are used as a substitute for wages rather than to pay for healthcare, there are significant tax consequences. This Court concludes, as did the District Court, that a HSA is not a substitute for wages, but rather is "a place to park wages that, if used for qualified healthcare expenses, allows favorable tax treatment." Consequently, the exemptions provided in OCGA § 44-13-100 (a) (2) (C) and (a) (2) (E) do not apply.[12]

### Conclusion

A HSA does not constitute a right to receive a "disability, illness, or unemployment benefit" for the purposes of OCGA § 44-13-100 (a) (2) (C), nor does it constitute a right to receive a "payment under a pension, annuity, or similar plan or contract" for the purposes of OCGA § 44-13-100 (a) (2) (E).

*Certified questions answered. All the Justices concur.*

DECIDED NOVEMBER 21, 2016.

*Stone & Baxter, Ward Stone, Jr., Matthew S. Cathey, Thomas T. McClendon*, for appellant.

*Akin, Webster & Matson, Robert M. Matson*, for appellee.

---

[12] It is noteworthy that *Silliman*, and indeed, *Rousey*, upon which it relies, were well-established law at the time of the General Assembly's last revision of the statutory provision in 2015.

