TATE *v.* ATLANTA JOINT STOCK LAND BANK *et al.*

No. 10613.   MAY 18, 1935.

*J. K. Jordan,* for plaintiff.

*Colquitt, Parker, Troutman & Arkwright* and *Howard B. Payne,* for defendants.

BELL, Justice. (After stating the foregoing facts.)

■ In *Provident Savings Life Assurance Society* v. *Georgia Industrial Co., 124 Ga. 399 (2) (52 S. E. 289),* this court held: "A provision in a security deed for accelerating the maturity of the debt should not be so construed as to work hardship on the borrower, where there has been a bona fide effort on his part to comply with his covenant, and the circumstances are such that his efforts at compliance were apparently acceptable to the lender. In such a case, when there has been no waiver of the covenant by the lender, good faith requires that he should, before undertaking to enforce the provisions of the deed accelerating the maturity of the debt for non-compliance with the terms of the covenant, afford to the bor-

rower a reasonable opportunity to fully meet his obligations there-under." See also *Studdard* v. *Hawkins,* 139 *Ga.* 743 (2) (78 S. E. 116); *Smith* v. *Gholstin,* 45 *Ga. App.* 287 (4) (164 S. E. 217), and cit. The same rule might or might not apply where, instead of containing a mere option, the contract provides for automatic maturity on an installment default. See *Cox* v. *Henry,* 172 *Ga.* 609 (158 S. E. 296); *Gilford* v. *Green,* 33 *Ga. App.* 1 (125 S. E. 80). In the present case the contract contained the *option* provi-sion; and it is alleged that after a course of dealing wherein the bank indulged the plaintiff from three to six months on each pre-vious installment, it could not lawfully withdraw from this prac-tice without giving the plaintiff reasonable notice of its intention to do so. The petition affirmatively shows, however, that the bank did, on January 14, 1933, notify the plaintiff of its intention to foreclose, and that this notice antedated the first issue of the advertisement by 17 days and preceded the sale by 45 days. The plaintiff alleges that this was not a reasonable notice. This is a mere conclusion of the pleader, and the question whether it was reasonable or not must be determined from all the facts and circum-stances. The question of what is a reasonable time is generally a matter for the jury, although, if the facts and circumstances are such as to authorize but one inference, the question may be solved by the court as a matter of law. As to this feature of the case, the plaintiff contends merely that the bank had habitually in-dulged him, and had thus waived its right to exercise the ac-celerating clause without first giving him a reasonable opportunity to meet his obligation. We are thus considering at this point only the matter of voluntary waiver, and not the claim of an exten-sion for a valuable consideration. An installment of $262.50 was due May 1, 1932. Not until July was anything paid on this item. On July 2, the plaintiff paid $87 on this installment and $9 on fire and tornado insurance, he having promised to keep the property insured. An installment of $262.50 was again due No-vember 1, 1932, and the plaintiff again defaulted. So, on Janu-ary 14, 1933, the bank in effect notified the plaintiff that it would exercise its option to declare the entire debt due and to sell the property under the power of sale. The plaintiff apparently treated the notice as sufficient, because he made no complaint at the time, but permitted the sale to proceed, when, if his present

position is sound, he could have enjoined the sale and prevented its consummation. The question whether the notice was reasonable is not a mere abstraction, but is a matter to be determined from a practical standpoint. The plaintiff alleges nothing to show that notice for a longer period would have been of the slightest value to him. He refers in his petition to an inadequate sum of money which he could have applied upon this indebtedness, except for a garnishment. But this fund was not released until August, 1933, and his petition shows that from November, 1932, he was financially "unable to dissolve said garnishment." The amount garnished was only $371.28, in the form of pension checks payable to the plaintiff's sons, and it does not appear at what times or in what amounts further assistance from his sons would have been available. The petition fails to show that the plaintiff could have met his obligations upon the release of the garnishment, more than six months after receiving the bank's notice, or even that he could ever have done so. From the allegations made and the lack of others, the necessary inference is that the notice was sufficient, and that the sale was not premature because a more extended notice was not given. See, in this connection: *Ford* v. *Cunningham,* 174 *Ga.* 171 (162 S. E. 387) ; *Ford* v. *Prudential Co.,* 174 *Ga.* 163 (162 S. E. 382) ; Haase *v.* Blank, 177 Wis. 17 (187 N. W. 669, 21 A. L. R. 1543). It would seem that the question here considered is really one of estoppel. The petition does not show that the plaintiff was misled to his injury, and therefore it does not appear that the bank was estopped.

■ The petition, being challenged by demurrer, is to be construed most strongly against the plaintiff. It is alleged that the pension checks of the plaintiff's sons, amounting to $371.28, were deposited with one T. S. Jones, "to hold for said purpose or for the payment of any other of the plaintiff's obligations as he might by his agent, Jean Tate, thereafter direct, which said custodian consented to do, and plaintiff by his said agent did afterwards, on or about September 1, 1932, direct said custodian to hold as agent of the bank, with its consent, all of said fund for defendant bank pending accumulation of sufficient additional funds to meet the November, 1932, installment." It is contended that the whole of this pension fund was thus equitably assigned to the bank, and that such assignment constituted a valuable consideration. The

allegation as to the assignment is a mere conclusion of the pleader, not supported by the predicate facts. One of the requisites of a valid equitable assignment is that the parties shall contemplate "an immediate change of ownership with respect to the particular fund in question, not a change of ownership when the fund should be collected or realized, but at the time of the transaction relied upon to constitute the assignment." *United Engineers Inc.* v. *Fiat Metal Mfg. Co.,* 175 *Ga.* 509, 513 (165 S. E. 609) ; *Jones* v. *Glover,* 93 *Ga.* 484 (21 S. E. 50). The petition shows no intention on the part of any one that the pension checks or the fund represented thereby should have at any time become the property of the bank. Nothing was ever paid by the plaintiff on either of the installments which fell due in 1932, except a partial payment on a past due item.

The increase in the rate of interest effective from maturity arose in virtue of the loan contract, and did not constitute a new consideration. The petition wholly fails to show a consideration for an extension of any of the indebtedness, and so there is no merit in the contention that the sale was in violation of any right granted to the plaintiff by contract.

■ The mere stringency of the times did not invalidate the power of sale or postpone any of the rights granted to the bank by the loan contract. There was at the time of such sale no moratory statute in this State. See, in this connection : *Bank of Alapaha* v. *Purvis,* 178 *Ga.* 284 (173 S. E. 103) ; *Stanton* v. *Mortgage Guarantee Co.,* 179 *Ga.* 867 (177 S. E. 556) ; Kenly *v.* Huntingdon Building Asso., 166 Md. 182 (170 Atl. 526, 90 A. L. R. 1321) ; Dunton *v.* Sharpe, 70 Miss. 850 (12 So. 850). The petition alleges in general terms that a conspiracy existed between the bank and the other defendants who after the "foreclosure sale" purchased a part of the property from the defendant bank. It does not appear that any unlawful act was contemplated or committed. "An allegation of collusion by the defendants to do that which was lawful was of no avail." *Latimer* v. *Lyon,* 177 *Ga.* 888 (2) (171 S. E. 562). The sale was not void or voidable because the bank may not have stricken from the notes the amount of the unearned interest. Whether or not the bank could hold the plaintiff liable for such interest is a different question. 41 C. J. 852, § 1037.

So far as appears, the power of sale was fairly exercised, and no

right of the plaintiff was violated. The mere fact that the property did not bring anything like its true value does not afford the plaintiff any legal or equitable cause for complaint. "Inadequacy of price, in the absence of fraud upon the part of the grantee in the security deed, is not ground for setting aside the sale and cancelling the deed." *Cox* v. *Henry,* supra.

The petition failed to state a cause of action, and was properly dismissed on general demurrer.

        *Judgment affirmed. All the Justices concur.*

ATKINSON, J., concurs in the result.