S08A1223. SELPH v. WILLIAMS et al.
(667 SE2d 40)

HUNSTEIN, Presiding Justice.

Pamela Selph appeals from the trial court's order in this quiet title action adopting the special master's report finding that Selph is not the fee simple title holder to the 50-acre tract in issue but rather holds the property, based on proportional shares, with appellees. For the reasons that follow, we reverse.

In 1916 Carrie Williams acquired a one-half remainderman interest in 101 acres in Telfair County. The purchase price for the

---

entire tract was $500. In 1933 the County levied upon Carrie's 50 acres and home on that property for non-payment of taxes.[1] At the tax sale in December 1933 the County purchased the property for $38.01. It is undisputed that neither Carrie nor anyone on her behalf redeemed the property within the 12-month period provided under the statute in effect at that time. Code of 1933, § 92-8301.[2] Carrie Williams remained on the property after the December 1933 tax sale and died intestate in October 1936. She left ten surviving children, including the parents of appellees and Oscar Williams ("Oscar"), appellant's predecessor in interest.

In September 1937 Oscar purchased the property from the County for $38. The deed recites that the County was conveying fee simple title to Oscar of property "formerly owned by Carrie Williams and the place whereon she resided at the time of her death" which the County "acquired . . . at a tax sale, and the same was not redeemed within the time provided by law, and thereafter second party [i.e., Oscar] made offer [that] was accepted and approved by" the County. It appears that Oscar and/or his siblings continued to live on the property for decades thereafter and there was some evidence that subsequent actions taken by Oscar in connection with the property indicated that he considered himself a tenant in common with his siblings.

After Oscar died intestate, the property was deeded to his child by gift deed recorded in 1994. The child conveyed her interest to appellant's immediate predecessor in interest by warranty deed in 2005. After appellant acquired the property in 2006, she instituted this quiet title action. Appellees, as the heirs at law of Carrie Williams, answered and counterclaimed, asserting ownership of the property as tenants in common in proportional shares as derived by intestate succession from Carrie's children.

The special master, whose findings and legal conclusions were adopted by the trial court, found that Oscar did not obtain fee simple

---

[1] The other half of the property was acquired by Walter Graham. The property was burdened by a life estate held by the grantor, Sophie Graham, who died in 1938. Although it does not appear that there was a formal partitioning of the property, the parties do not claim there is any difficulty separating Carrie's portion from Walter Graham's portion.

[2] § 92-8301, Code of 1933, provided:

Where real estate has been sold under any State, city, county, or school tax fi. fa., . . . the same may be redeemed at any time within 12 months after the sale, by the defendant in fi. fa., his guardian or trustee, heirs or personal representatives, or by any tenant in common, remainderman, or other person having an interest in such property, or by the holder of any mortgage, judgment, lien, or other interest in said property, or by any creditor of the defendant in fi. fa., by paying the purchaser the amount paid by said purchaser for said land, with 10 per cent. premium thereon. The 10 per cent. premium may not be increased by the addition of interest or otherwise.

title to the property when he purchased it in 1937 but rather that the purchase was merely an out-of-time redemption of the property so that Oscar held the title in common with his siblings. The special master reasoned that, although the property was not redeemed within the statutory 12-month period in § 92-8301 (current OCGA § 48-4-40 (1)), the right to redeem had not been foreclosed by the giving of the notice provided for in OCGA § 48-4-45; this inchoate right to redeem the property passed as part of Carrie's intestate estate; and thus when Oscar purchased the property, he did so with the intent to redeem the property for all of Carrie's heirs. The factual underpinning of this finding was the special master's speculation that Carrie's half share interest in property purchased for $500 in 1916 would have been worth at least $250 in 1937, so that the $38 paid for it by Oscar (one cent less than the amount paid for it by the County in 1933) "evidence[d] an intent on the part of Oscar Williams to redeem the property for the estate of Carrie Williams and her heirs."

We agree with appellant that the trial court erred by adopting the special master's report because it is both legally and factually incorrect. The legal error concerns the application to this case of OCGA § 48-4-40 (2), which extends the right to redeem property past the 12-month period in OCGA § 48-4-40 (1) (former § 92-8301) until the giving of proper notice, as provided for in OCGA § 48-4-45. However, the act that first introduced this extension into Georgia law was approved March 31, 1937. Ga. L. 1937, p. 491. The special master thus erred by applying statutory law that did not exist at the time of Carrie's death when it held that Carrie had a redemption "right" that passed as part of Carrie's intestate estate to her children.[3] Furthermore, while the sale of the property by the County to Oscar in October 1937 would have occurred after the predecessors to OCGA §§ 48-4-40 (2) and 48-4-45 were enacted, those provisions would not have applied to the 1933 tax sale or the outstanding tax deed. That is because the act specifically provided

> [t]hat nothing herein contained shall be construed or held
> to apply to or affect any tax sale heretofore held or any tax
> deed now outstanding, as to which the sections of the Code
> hereby [repealed] shall remain of full force and effect.

Ga. L. 1937 at 496, § 3. "[T]he rights of the parties as to the time for a tax redemption are controlled by the law as it existed at the time of the tax sale. [Cit.]" *Durham v. Crawford*, 196 Ga. 381, 384 (1) (26

---

[3] Therefore, we need not reach the question whether a "right of redemption" is an interest that is even capable of being passed by intestacy.

SE2d 778) (1943). Thus, the special master erred as a matter of law by concluding that a statutory right to redeem the property until the giving of notice of redemption existed either at Carrie's death or at the time the property was purchased by Oscar. When the statutes in effect at the time of the events in this case are applied, it is clear that the title conveyed by the 1933 tax sale became absolute in the County, as the purchaser at the tax sale, when the 12-month redemption period expired. See id. at 386 (3).

Although redemption within 12 months from the date of the tax sale was the sole statutory method for redeeming property applicable to this case, case law recognized that § 92-8301 (current OCGA § 48-4-40 (1)) did not "inhibit" the purchaser of the property from selling the property back to the defendant in fi. fa. for its tax sale purchase price; however, whether the tax sale purchaser chose to do so was a decision purely within the property purchaser's "grace." *Union Central Life Ins. Co. v. Bank of Tignall*, 182 Ga. 233 (185 SE 108) (1936). "A purchaser at tax sale may accord the defendant in fi. fa. a privilege of redeeming the property after expiration of the statutory period during which he has a right to redeem." Id.[4] However, the evidence adduced by the parties does not support a factual finding that Oscar redeemed the property by the "grace" of the County rather than purchased it in fee simple. Although the special master stressed that Oscar purchased the property for one cent less than the County had paid for it four years earlier, there was no evidence regarding the value of the property at the time of its purchase in 1937 and it was mere speculation on the special master's part that Carrie's share of the 101 acre tract would have been worth at least $250, one-half of its original purchase price.[5] Furthermore, there is a presumption of regularity that requires the courts to presume that public officers have properly discharged their official duties. See generally *Carson v. State*, 241 Ga. 622 (2) (247 SE2d 68) (1978). For the 1937 transaction to have been a redemption, it would first require a finding that the County chose to exercise its "grace" to allow a redemption, without memorializing that decision in any manner, and without regard to the statutory redemption period in

---

[4] We find no merit in appellee's argument that, because the County had the discretion to allow the property's repurchase for the tax sale amount, this "grace" constituted a "right to redeem" that could be distributed as part of Carrie's intestate estate to her heirs.

[5] While Oscar purchased the property in 1937 for an amount dramatically lower than that paid by his mother two decades earlier, one possible explanation for the difference may be the effect of the Great Depression on rural land values in the 1930's when these events occurred. E.g., *Tate v. Atlanta Joint Stock Land Bank*, 180 Ga. 631 (180 SE 112) (1935) (borrower, whose loan was secured by real property, could not use the "mere stringency of the times" to invalidate the power of sale in defaulted loan contract where borrower's deposited funds were in banks that failed, leaving him unable to pay his secured debt).

§ 92-8301. Next, it would require a finding that the County then chose to ignore the requirement in that same statute that a redemption be accompanied by the payment of a ten percent premium, inasmuch as the County paid $38.01 for the property and Oscar paid only $38.[6] Finally, it would require a finding that the County chose to reject the statutory requirements regarding the manner in which such redemptions must be handled, as set forth in § 92-8304. See Ga. L. 1898, pp. 85, 86, § V (the predecessor to OCGA § 48-4-44).[7] Given the presumption of regularity and the absence of any evidence in the record to establish that the County chose to act in such an irregular manner, we conclude that the special master erred when it found that the 1937 sale of the property by the County to Oscar was a redemption and not a fee simple conveyance.

Appellees also argue that the County, as the purchaser at the tax sale, could not have purchased the whole estate in 1933 because Carrie was only the remainderman and the life tenant did not die until 1938. However, the sole authority appellees cite in support of this argument, *Dixon v. Evans*, 222 Ga. 133 (149 SE2d 124) (1966), is clearly distinguishable. *Dixon* involved a tax execution against a life tenant on property that was not in the possession of the life tenant. We recognized that, while title to the whole fee (including the remainder estate) passes when the life tenant is in possession of the property, id. at 136 (2), an execution embraces only the life estate when the life tenant is not in possession of the property. Id. at 137 (2). Here, however, the taxes were owed by the remainderman, not the life tenant; the evidence reflects that the remainderman was in possession of the property; and the life tenant did not act to redeem the property. We thus conclude, under these circumstances, that the County purchased the whole fee to Carrie's half of the property at the tax sale in 1933.

For these reasons, we reverse the trial court's ruling adopting the special master's report.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 22, 2008.

---

[6] With ten percent added, the sales price should have been $41.81.

[7] Using the modernized language, as set forth in OCGA § 48-4-44, the statute provides that

(a) [i]n all cases where property is redeemed, the purchaser at the tax sale shall make a quitclaim deed to the defendant in fi. fa., which deed shall recite:

(1) The name of the person who has paid the redemption money; and

(2) The capacity in which or the claim of right or interest pursuant to which the redemption money was paid.

(b) The recitals required by . . . this Code section shall be prima-facie evidence of the facts stated.

*Smith & Cannon, Chester L. Cannon, Jr.,* for appellant.
*Marchant & Harrelson, Lenard F. Harrelson, Jr.,* for appellees.