313 Ga. 30
FINAL COPY

S21G0459. BELL v. HARGROVE.

COLVIN, Justice.

Georgia law generally requires a person to apply for and receive a valid weapons carry license from a probate judge before carrying a handgun or other weapon in public.[1] The General Assembly has identified specific categories of people to whom "[n]o weapons carry license shall be issued," including people with certain criminal convictions. OCGA § 16-11-129 (b) (2). To assist probate judges in determining whether an applicant has a disqualifying

_____

[1] "No person shall carry a weapon without a valid weapons carry license unless he or she meets one of the exceptions to having such license as provided in subsections (a) through (g) of this Code section." OCGA § 16-11-126 (h) (1). See also OCGA § 16-11-125.1 (5) (defining "weapon" as including handguns). Under the enumerated exceptions, if certain conditions are met, a person need not have a valid weapons carry license to, among other things, carry a handgun on his or her property or in his or her home, motor vehicle, or place of business, openly carry a loaded long gun, carry an unloaded handgun in an enclosed case, or carry a handgun or long gun while hunting, fishing, or engaging in shooting sports. See OCGA § 16-11-126 (a)-(c), (f). We note that the statutes governing weapons carry licenses have been amended several times since February 2018, when the weapons carry license application at issue in this case was submitted. Unless otherwise indicated, however, the provisions of the statutes cited in this opinion are the same today as they were in February 2018.

conviction, the General Assembly has provided a mechanism for a probate judge to obtain a criminal history report for an applicant. See OGCA § 16-11-129 (d). Once a probate judge has a sworn application and a criminal history report in hand, the probate judge's discretion to deny a weapons carry license is limited. Under OCGA § 16-11-129 (d) (4), a probate judge "shall issue" a license "unless" (1) "facts establishing ineligibility have been reported[,]" or (2) "the judge determines such applicant has not met all the qualifications, is not of good moral character, or has failed to comply with any of the [statutory] requirements[.]" We granted certiorari to determine whether a probate judge may deny an application for a weapons carry license under OCGA § 16-11-129 based on a determination that the applicant's criminal history records report fails to show the outcome of an arrest that could have resulted in a disqualifying conviction. Applying the plain language of the statute, we conclude that a probate judge has no such authority. We therefore reverse the Court of Appeals' decision to the contrary. See *Bell v. Hargrove*, 357 Ga. App. 802 (849 SE2d 554) (2020).

1. On February 13, 2018, Clinton Bell filed an application for a Georgia weapons carry license with the DeKalb County Probate Court. After running a criminal history records check on Bell, law enforcement returned a criminal history report to Probate Judge Bedelia Hargrove. The report stated that Bell had been arrested on May 27, 1986, for the "Misdemeanor" offense of "Pointing or Aiming Gun or Pistol at Another."[2] But the report did not include any information about whether the State had prosecuted Bell for the offense or the results, if any, of such a prosecution.

Based on Bell's 1986 arrest, the probate judge denied his application for a weapons carry license, concluding that, if Bell's 1986 arrest had resulted in a conviction and the conviction had involved domestic violence, Bell would be ineligible for a weapons carry license. The judge reasoned that OCGA § 16-11-129 (b) (2) (E) provides that "[n]o weapons carry license shall be issued to . . . [a]ny person who is prohibited from possessing or shipping a firearm in

---

[2] "A person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded." OCGA § 16-11-102.

3

interstate commerce pursuant to subsections (g) and (n) of 18 U.S.C. Section 922[,]" and 18 USC § 922 (g) (9), in turn, prohibits the possession or shipment of a firearm in interstate commerce by someone "who has been convicted in any court of a misdemeanor crime of domestic violence[.]" Although Bell had sworn under penalty of perjury in his application that he had never been convicted of a misdemeanor crime of domestic violence[3] and nothing whatsoever in the criminal history report indicated that the 1986 arrest involved domestic violence, the judge concluded that the "incomplete" information on the report about the "disposition" of his 1986 arrest did not allow her to rule out a "possible" conviction for a misdemeanor domestic violence offense. Concluding that she *could*

---

[3] Bell checked the box for "No" in response to the following question: Have you ever been convicted of, or pled guilty to, any misdemeanor crime involving the use or attempted use of physical force or threatened use of a deadly weapon towards (a) anyone as to whom at the time of the offense you were a current or former spouse, parent or guardian or similarly situated to a spouse, parent or guardian, (b) a person with whom you had a child in common, or (c) a person you lived with or had lived with as a spouse, parent or guardian or similarly situated to a spouse, parent or guardian, including but not limited to a girlfriend, boyfriend, step-child, foster child or ward?

*not determine* whether Bell had met all the qualifications for a weapons carry license, the judge denied Bell's application.

Bell filed suit against the probate judge in superior court, alleging that her denial of his application violated OCGA § 16-11-129 (d) (4) and that he was entitled to a writ of mandamus ordering her to issue him a weapons carry license. The parties filed cross-motions for summary judgment, and, after a hearing, the trial court ruled in favor of the probate judge. The Court of Appeals affirmed the trial court's order, see *Bell*, 357 Ga. App. at 814 (1), and we granted certiorari.

2. When a probate judge denies an application for a Georgia weapons carry license, the applicant has a statutory right to "bring an action in mandamus or other legal proceeding in order to obtain such license." OCGA § 16-11-129 (j). "To obtain the right to the extraordinary remedy of mandamus, the petitioner must show either a clear legal right to the relief sought or a gross abuse of discretion." *Hertz v. Bennett*, 294 Ga. 62, 62 (1) (751 SE2d 90) (2013). Although the trial court and the Court of Appeals ruled that Bell

failed to carry his burden to obtain mandamus relief, the plain language of OCGA § 16-11-129 (d) (4) leads us to conclude otherwise.

When construing a statute, "we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). Accordingly, we "afford the statutory text its plain and ordinary meaning," "view[ing] the statutory text in the context in which it appears," and "read[ing] the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id. at 172-173 (1) (a) (punctuation omitted). When, as here, statutory text is "clear and unambiguous," our interpretive task begins and ends with the text itself. Id. at 173 (punctuation omitted).

In OCGA § 16-11-129, the General Assembly set out a streamlined procedure for processing applications for weapons carry licenses. An applicant initiates the process by submitting an application under oath to a probate judge, having his or her photograph and fingerprints taken, and paying the required fees.

6

See OCGA § 16-11-129 (a), (c), (f) (2).  After receiving the application,

a probate judge must direct the "appropriate law enforcement

agency in the county[,]" OCGA § 16-11-129 (c), to

> (d) (1) (a) . . . request a fingerprint based criminal
> history records check from the Georgia Crime Information
> Center and Federal Bureau of Investigation for purposes
> of determining the suitability of the applicant and return
> an appropriate report to the judge of the probate court[;]
> . . .
> (2) . . . conduct a background check using the Federal
> Bureau of Investigation's National Instant Criminal
> Background Check System and return an appropriate
> report to the probate judge[; and]
> (3) [w]hen a person who is not a United States
> citizen applies for a weapons carry license[,] . . . conduct
> a search of the records maintained by United States
> Immigration and Customs Enforcement and return an
> appropriate report to the probate judge. . . .

OCGA § 16-11-129 (d) (1) (A), (2), (3).  Based on the records check

results, the county law enforcement agency must then report to the

probate judge "any findings relating to the applicant which may bear

on his or her eligibility for a weapons carry license[.]"  OCGA § 16-

11-129 (d) (4).  Finally, paragraph (d) (4) provides that, "after the

judge of the probate court receives the report from the law

enforcement agency[,]" the probate judge

7

*shall* issue such applicant a license or renewal license to carry any weapon *unless* facts establishing ineligibility have been reported or *unless* the judge determines such applicant has not met all the qualifications, is not of good moral character, or has failed to comply with any of the requirements contained in this Code section. . . .

Id. (emphasis supplied).

By its plain terms, paragraph (d) (4) sets out a mandatory requirement that a probate judge "shall" issue a license "unless" a listed exception applies.[4]   OCGA § 16-11-129 (d) (4); see *Mead v. Sheffield*, 278 Ga. 268, 269 (601 SE2d 99) (2004) ("'Shall' is generally construed as a word of command.");[5] see also Merriam-Webster's Collegiate Dictionary 1370 (11th ed. 2006) (defining "unless" as "except on the condition that").   The statute enumerates only two exceptions to this command, both of which require that the probate judge make an affirmative factual determination that the applicant

---

[4] The phrase "shall issue . . . a license . . . unless" first appeared in the 2008 version of the statute.  OCGA § 16-11-129 (d) (4) (2008).

[5] "Although the word 'shall' is 'generally construed as a mandatory directive,' this Court has explained that it 'need not always be construed in that fashion,' if the context in which it is used indicates a permissive instruction."  *Carr v. State*, 303 Ga. 853, 865 (5) (a) n.15 (815 SE2d 903) (2018) (citation omitted).  Here, we discern no contextual basis for concluding that the word "shall," as used in OCGA § 16-11-129 (d) (4), does not function as a mandatory directive.

8

does not qualify for a weapons carry license. First, a probate judge may deny a license if "facts *establishing* ineligibility have been reported[.]" OCGA § 16-11-129 (d) (4) (emphasis supplied). Second, a probate judge may deny a license if "the judge *determines* such applicant *has not met* all the qualifications, *is not of* good moral character, or *has failed to* comply with any of the [statutory] requirements[.]" Id. (emphasis supplied). The statute recognizes no other exceptions to a probate judge's duty to grant an application for a weapons carry license. Accordingly, "unless" one of the two exceptions applies, the probate judge must issue a weapons carry license. See id.

3. With this understanding of OCGA § 16-11-129 (d) (4) in mind, we turn to the heart of the question presented on certiorari: Does a probate judge have discretion to deny an application for a weapons carry license based solely on a determination that an applicant's criminal history report raises a question about whether the applicant has a disqualifying conviction? Applying the plain language of the statute, the clear answer to this question is "no."

9

Information that merely indicates or leaves open the possibility that an applicant *might* be ineligible for a weapons carry license neither "establish[es]" the applicant's "ineligibility" nor provides evidentiary support for a "determin[ation]" that the "applicant has not met all the qualifications, is not of good moral character, or has failed to comply with any of the [statutory] requirements[.]" OCGA § 16-11-129 (d) (4).[6] In other words, mere speculation or uncertainty about an applicant's qualifications for a weapons carry license cannot support a determination that an applicant is ineligible or disqualified from obtaining a license. Cf. *Selph v. Williams*, 284 Ga. 349, 352 (667 SE2d 40) (2008) (holding that "mere speculation" could not support a factual finding in a special master's report); see also *Davis v. Davis*, 262 Ga. 420, 421 (3) (419 SE2d 913) (1992) (noting that "speculative" findings "not supported by the evidence" are clearly erroneous).

---

[6] The probate judge does not argue that Bell's 1986 arrest showed that he "[wa]s not of good moral character" or that he "failed to comply with any of the [statutory] requirements[,]" OCGA § 16-11-129 (d) (4), so we will not address the substance of those grounds in this opinion.

10

4. Here, Bell had a clear legal right to receive a weapons carry license under OCGA § 16-11-129 (d) (4). In his sworn application, Bell stated that he had never been convicted of a misdemeanor crime of domestic violence, which would have rendered him ineligible for a weapons carry license under OCGA § 16-11-129 (b) (2) (E), and no evidence indicated that his statement was false. Nevertheless, because Bell's criminal history report did not allow the probate judge to rule out the possibility that his 1986 arrest for pointing a pistol at another might have resulted in a disqualifying conviction, she concluded that she could not determine whether Bell qualified for a weapons carry license and denied his application on that basis. Given the record here, the probate judge had no valid statutory basis for denying Bell's application on that ground.

The rationale the probate judge gave for denying Bell's application finds no support in the statute. A finding that the probate judge *cannot determine* whether an applicant is ineligible or unqualified cannot itself justify the denial of an application. Paragraph (d) (4) affords a probate judge no discretion to deny an

application for a weapons carry license unless the probate judge makes an affirmative determination that the applicant is *in fact* ineligible or unqualified to receive such a license. See OCGA § 16-11-129 (d) (4).[7]

Moreover, the probate judge did not make a determination, and could not have determined based on the evidentiary record, that an exception to her duty to issue a license applied. As the Court of Appeals correctly found, and as the judge concedes before this Court, "facts establishing ineligibility" were not reported in Bell's criminal

---

[7] We note that a prior version of the statute provided that a probate judge "shall issue . . . a license . . . if the judge *determines* the applicant *has met* all the qualifications[.]" OCGA § 16-11-129 (d) (4) (2006) (emphasis supplied). By its plain terms, that version of the statute required a probate judge to make an affirmative determination that an applicant was qualified before issuing a license. Cf. *Moore v. Cranford*, 285 Ga. App. 666, 671-672 (1) (647 SE2d 295) (2007) (holding that the 2006 version of the statute implicitly extended the deadline for processing an application for a weapons carry license when the law enforcement agency did not timely return a criminal history report because a probate judge could not determine that the applicant had met all the qualifications without the report). The General Assembly, however, has since flipped the burden of proof. Since 2008, the statute has provided that a probate judge must affirmatively determine that an applicant is *not* qualified before denying a license. See OCGA § 16-11-129 (d) (4) (2008) (providing that the probate judge "shall issue . . . a license . . . unless the judge determines such applicant *has not met* all the qualifications" (emphasis supplied)). A finding that the probate judge cannot determine whether the applicant is qualified is not equivalent to a finding that the applicant is not qualified.

history report or application. See OCGA § 16-11-129 (d) (4). While Bell would have been ineligible for a weapons carry license if he had a conviction for a misdemeanor crime of domestic violence,[8] the evidence before the probate judge showed that Bell did not have such a conviction. Bell swore under oath in his application that he was never convicted of a misdemeanor crime of domestic violence, and his criminal history report — which showed only an arrest for an offense that hypothetically could have involved domestic violence — did not contradict his sworn statement.

For the same reasons, the evidence before the probate judge did not support a "determin[ation]" that Bell "ha[d] not met all the qualifications" for a weapons carry license. OCGA § 16-11-129 (d) (4). The judge's argument that this provision calls on a probate judge to make a "quintessentially discretionary" determination about an applicant's qualifications is incorrect. Because the statute enumerates the categories of persons who are disqualified from

---

[8] See OCGA § 16-11-129 (b) (2) (E) and 18 USC § 922 (g) (9).

13

receiving a weapons carry license, see OCGA § 16-11-129 (b) (2),[9] a probate judge has no discretion to create new grounds for disqualification. See *Mooney v. Webster*, 300 Ga. 283, 288 (794 SE2d 31) (2016) (discussing "the long-recognized doctrine of statutory construction, expressio unius est exclusio alterius, which discourages judicial recognition of exceptions not specifically set forth in a legislative enactment when other exceptions are expressly stated"). Further, because *no evidence* supported a finding that Bell "ha[d] not met all the qualifications" for a weapons carry license based on a disqualifying conviction, OCGA § 16-11-129 (d) (4), this case did not call upon the probate judge to exercise discretion in weighing *conflicting evidence* about his qualifications. Cf. *Ellis v. Ellis*, 290 Ga. 616, 617 (1) (724 SE2d 384) (2012) ("[T]he trial court

---

[9] The statute identifies several categories of persons to whom "[n]o weapons carry license shall be issued[,]" including, for example, "[a]ny person younger than 21 years of age unless [certain conditions apply,]" "[a]ny person who has been convicted of a felony[,]" "[a]ny person who has been convicted of an offense arising out of the unlawful manufacture or distribution of a controlled substance or other dangerous drug[,]" and "any person who has been hospitalized as an inpatient in any mental hospital or alcohol or drug treatment center within the five years immediately preceding the application." OCGA § 16-11-129 (b) (2) (A), (B), (F), (J).

is authorized to resolve conflicts in the evidence."). Moreover, the probate judge did not purport to weigh the evidence and conclude that Bell did not meet the qualifications but rather said she could not make such a determination.

5. The Court of Appeals concluded that OCGA § 16-11-129 afforded the probate judge discretion to make a "judgment call" that Bell's criminal history report was "incomplete" and therefore not "appropriate" because, in the court's view, the structure of OCGA § 16-11-129 required a probate judge "to make a threshold determination as to whether the report returned by the law enforcement agency constituted an appropriate report." *Bell*, 357 Ga. App. at 812, 814 (1). The court reasoned that, because paragraphs (d) (1) and (d) (2) contemplate that the county law enforcement agency will return an "appropriate report," and receiving "the report" is what triggers a probate judge's duty to process an application for a weapons carry license under paragraph (d) (4), a probate judge cannot grant an application unless it has first determined that the report is "appropriate." Id. Accordingly, the

court concluded, a probate judge may deny an application if it determines that the report returned by the law enforcement agency is not "appropriate." Id. at 814 (1).

The Court of Appeals' understanding of the statutory scheme was incorrect. As an initial matter, OCGA § 16-11-129 (d) (4) does not state that a probate judge may deny an application based on a threshold determination that an applicant's criminal history report is "incomplete" or otherwise not "appropriate." Instead, as discussed above, the statute enumerates only two exceptions to a probate judge's duty to issue a license: a probate judge may deny an application only if the judge determines that (1) the facts reported establish the applicant's ineligibility, or (2) the applicant is unqualified, not of good moral character, or has not met all statutory requirements. OCGA § 16-11-129 (d) (4). Given these enumerated exceptions, there is a strong presumption that the statute does not recognize additional exceptions. See *Mooney*, 300 Ga. at 288.

Contrary to the Court of Appeals' analysis, the interplay between paragraphs (d) (1), (2), and (4) does not allow, let alone

16

require, a probate judge to make a threshold determination that a criminal history report is "appropriate." As explained in Division 2 above, paragraphs (d) (1), (2), and (3) instead require a probate judge to direct the appropriate law enforcement agency in the county to request criminal history checks from state and federal law enforcement agencies and to conduct a background check using the FBI's National Instant Criminal Background Check System "for purposes of determining the suitability of the applicant" and then to "return an appropriate report" to the probate judge. OCGA § 16-11-129 (d) (1) (A), (2), (3). The term "appropriate report" has a clear meaning in context that does not call upon a probate judge to exercise judgment about whether the information produced in the criminal history check process is comprehensive or sufficiently inclusive. The ordinary meaning of "appropriate" is "especially suitable or compatible" or "fitting."[10] Merriam-Webster's Collegiate Dictionary 61 (11th ed. 2006) (defining "appropriate"); see also *Deal*,

---

[10] The phrase "return an appropriate report" first appeared in the 2006 version of the statute. OCGA § 16-11-129 (d) (1), (2) (2006).

294 Ga. at 172 (1) (a) (explaining that we generally interpret statutory text in accordance with its plain and ordinary meaning). Because the statute directs the law enforcement agency to return a "suitable" or "fitting" report after conducting a criminal history records check process meant to aid a probate judge in determining an applicant's eligibility for a license, the "appropriate report" referenced in the statute is simply one that includes any potentially relevant information derived from the records check process.

This interpretation of "appropriate report" is confirmed by paragraph (d) (4), which provides that "[t]he law enforcement agency shall *report* to the [probate] judge . . . by telephone and in writing . . . *any findings* relating to the applicant *which may bear on his or her eligibility* for a weapons carry license[,]" and that the probate judge has a limited time to process an application after the judge "receives *the report* from the law enforcement agency concerning the suitability of the applicant for a license." OCGA § 16-11-129 (d) (4) (emphasis supplied). Here, too, the statute indicates that "the report" is simply a report identifying any potentially relevant

18

"findings" from the criminal history checks. The fact that the law enforcement agency must report to the probate judge any relevant information discovered in the records check process does not suggest that a probate judge has discretion to deny an application if the report is not as thorough as the probate judge would like.[11]

To the extent that the statute grants discretion to determine what constitutes an "appropriate report," it grants that discretion not to the probate judge but instead to the law enforcement agency. Because the probate judge does not have access to information generated in the criminal history record check process until after the law enforcement agency "report[s] . . . any findings relating to the applicant which *may* bear on his or her eligibility for a weapons

---

[11] Notably, the criminal history information made available to a county law enforcement agency from the statutorily specified sources is limited to the information generated by computer databases maintained by the Georgia Crime Information Center, the Federal Bureau of Investigation, and United States Immigration and Customs Enforcement. It is unclear what authority a probate judge or county law enforcement agency would have to require those entities to include more or different information in their criminal history records reports. Further, although the probate judge suggested that Bell could file a certified copy of his police report from his 1986 arrest and other evidence showing the disposition of that charge with a motion for reconsideration, such information would not change the *report* that the judge received.

carry license[,]" only the law enforcement agency could determine what information might be relevant to include in the report. OCGA § 16-11-129 (d) (4) (emphasis supplied).[12]   The statute further clarifies that the duty to determine what to include in the report rests solely with the law enforcement agency by providing that, "[w]hen no derogatory information is found on the applicant bearing on his or her eligibility to obtain a license or renewal license, a report shall not be required."  Id.  Only the law enforcement agency would be privy to whether the criminal history check produced "derogatory information[,]" so only the law enforcement agency would be in a position to know whether a report is "required."  Id.  Because the statute gives no indication that a probate judge has discretion to

_____

[12] For example, the record in this case indicates that the county law enforcement agency did not pick and choose what information to include in its report regarding the FBI's National Instant Criminal Background Check System but simply relayed to the probate judge a computer-generated printout from the system, which included all information about Bell's criminal history maintained in the system.  Although the report was overinclusive, the law enforcement agency satisfied its duty to report "any findings relating to [Bell] which *may* bear on [Bell's] eligibility for a weapons carry license" by sending the probate judge a report that included *all* information produced from the criminal history record check.  OCGA § 16-11-129 (d) (4) (emphasis supplied).

20

determine what constitutes an "appropriate report," the Court of Appeals erred in concluding that the probate judge could make a discretionary choice to deny Bell's application on the ground that she did not find his criminal history report "appropriate."[13]

As a final matter, we are unpersuaded by the judge's policy argument that a probate judge should be afforded greater discretion to deny weapons carry licenses to protect the public from dangerous

---

[13] We note that nothing in the statute prohibits a probate judge who is dissatisfied with the law enforcement agency's report from requesting additional information from the law enforcement agency or performing a follow-up investigation of his or her own, so long as the judge observes the statutory time requirements for processing applications. See OCGA § 16-11-129 (d) (4) (providing that a probate judge must rule on an application "[n]ot later than ten days after the judge of the probate court receives the report" and "shall not suspend the processing of the application or extend, delay, or avoid any time requirements provided for under this paragraph"). The statute also authorizes a probate judge to investigate potential grounds for ineligibility and to revoke a license through a notice-and-hearing process after issuing a license to an applicant, if certain conditions apply:

> If, at any time during the period for which the weapons carry license was issued, the judge of the probate court of the county in which the license was issued shall learn or have brought to his or her attention in any manner any reasonable ground to believe the licensee is not eligible to retain the license, the judge may, after notice and hearing, revoke the license of the person upon a finding that such person is not eligible for a weapons carry license pursuant to subsection (b) of this Code section or an adjudication of falsification of application, mental incompetency, or chronic alcohol or narcotic usage. . . .

OCGA § 16-11-129 (e) (1).

people. Balancing policy considerations is a job for the General Assembly. It is not for us to second-guess the General Assembly's policy determinations as embodied in the statutory language it enacted.[14]

6. For the above-stated reasons, we conclude that Bell established that he had a clear legal right to a weapons carry license. Accordingly, we reverse the Court of Appeals' decision affirming the trial court's denial of mandamus relief. The Court of Appeals is directed to remand the case to the trial court with instructions to issue a writ of mandamus ordering Judge Hargrove to issue Bell a weapons carry license.

*Judgment reversed and case remanded with direction. All the Justices concur.*

---

[14] We note that, although Bell sought costs and attorney fees under OCGA § 16-11-129 (j), the trial court granted summary judgment to the probate judge on that issue, and Bell abandoned any challenge to the trial court's ruling by failing to raise the issue before the Court of Appeals. See *Blalock v. Cartwright*, 300 Ga. 884, 889 (III) n.4 (799 SE2d 225) (2017).

Decided December 14, 2021.

Certiorari to the Court of Appeals of Georgia – 357 Ga. App. 802.

*John R. Monroe*, for appellant.

*Bennett D. Bryan, Laura K. Johnson, Rebecca J. Dobras, Omari J. Crawford*, for appellee.

*Christopher M. Carr, Attorney General, Zachariah W. Lindsey, Assistant Attorney General, Andrew A. Pinson, Solicitor-General, Drew F. Waldbeser, Assistant Solicitor-General*, amici curiae.